McKIBBEN
vs
BAKERS.

ed against two jointly sued on the same note in the same suit.

---

ASSUMPSIT.

*Case* 42.

December 15.

The case stated.

## McKibben *vs* Bakers.

ERROR TO THE BRACKEN CIRCUIT.

*Construction of Contracts.*

JUDGE MARSHALL delivered the Opinion of the Court.

IN 1838, McKibben delivered at the mill of J. & A. Baker, in the town of Augusta, upwards of eleven hundred bushels of wheat, to be manufactured into flour and packed in barrels, which were furnished also by himself.

Sometime afterwards, the wheat having been ground and ready for delivery at the mill, McKibben sold 220 barrels of the flour to a baker in the city of Cincinnati, as superfine flour, at upwards of six dollars a barrel, and by his directions that number of barrels was deliver-

ed to his agent at the mill, and by him forwarded to McKibben at Cincinnati. On its arrival at Cincinnati it was inspected by a deputy inspector of the city, and 183 barrels were decided to be fine flour and the residue common, none of it being, according to the inspection, superfine. By the rates and usage of the Cincinnati market, when superfine flour was over six dollars a barrel, if flour, sold as superfine, turned out to be only fine, there was a deduction from the price, at the rate of 75 cents per barrel, and a deduction of $1 50 if it proved to be common. This deduction having been made upon McKibben's contract, he brought this action of assumpsit to recover the difference between the value of 220 barrels of superfine flour, and the value of the flour actually delivered.

The declaration avers the delivery of the wheat at the defendants' instance and request, to be ground and packed for a reasonable compensation, to be paid them on request, and that in consideration thereof, they, the defendants, undertook to manufacture it into flour, and pack it into barrels, and deliver to the plaintiff, in reasonable time, one barrel of superfine flour for every five bushels of said wheat; and alleges for breach, that although they did manufacture the wheat into flour and pack it in barrels, and deliver to plaintiff one barrel of flour, branded superfine, for every five bushels of said wheat, yet the flour was not superfine, but part, fine only, and the other common, greatly inferior to and of less value than superfine flour.

Upon the trial, under the general issue, there was no proof of any express contract for the delivery of one *barrel* of superfine flour for each five bushels of wheat, but the evidence conduced to prove that the wheat was received at the mill of the defendants without objection, and therefore, that it was fair merchantable wheat; that barrels were also delivered there, by the plaintiff, for packing it; that the plaintiff was charged in account for the grinding, &c.—and that the wheat was in fact ground, and the flour packed in barrels marked or branded at the mill, "superfine." It was further proved that five bushels of wheat, properly managed and ground, would produce one barrel of *superfine* flour, besides the inferior

McKibben
vs
Bakers.

qualities, and that it was customary at this and the neighboring mills, to deliver one barrel of superfine flour for every five bushels of wheat. These facts, even exclusive of the custom of the neighboring mills, the proof of which was excluded by the Court, sufficiently established the duty and undertaking of the defendants as alleged.

A manufacturer, for compensation, is bound to use due diligence in the business, and deliver the usual result of such diligence.

The millers were undoubtedly bound to use reasonable, that is, the usual and ordinary diligence and skill in manufacturing the plaintiff's wheat into flour, and to deliver to him, in flour, the usual results of such diligence and skill. And to prove these results, not only was direct proof of what they might and ought to be, admissible, but also proof of what they usually were, at other neighboring mills, as well as at this. Since such proof tends to show what was the produce of the wheat of that region when manufactured with ordinary skill, and was thus corroborative of the direct evidence on the subject.

In a suit against a manufacturer for failure in his duty, (material being furnished,) evidence of what was the usual product from such material at the place, and at other establishments in the neighborhood is proper.

The Court therefore erred in excluding this evidence. We are also of opinion that the instruction in relation to the proof of the contract given on motion of the defendants was not free from error, and may have misled the jury.

If the facts, as above set forth, were believed by the jury, the contract, as stated in the declaration, was established, and the jury were bound so to find; or if, as the instruction seems to imply, the jury had a right to determine whether on those facts, there was or was not such a contract, they would have had a right to determine that question like other questions of fact, upon their opinion of the tendency of the facts proved, to establish the fact in question.

Instructions given and refused.

They were instructed that the plaintiff must either prove an express contract, or one necessarily implied from the circumstances, without being told from what circumstances a contract would be necessarily implied. And they were told, erroneously as we think, that the brand, 'superfine,' upon the barrels, though made by the millers, did not conduce to prove that they had undertaken to make superfine flour.

But the most material question in the case, and it is one of great importance, is whether, assuming the wheat and

the barrels to have been delivered at the mill by the plaintiff, as alleged in the declaration, he was bound either to have the flour examined at the mill, when it was offered to his agent, and if inferior, to reject it, or upon his subsequent discovery of its defects, to return or offer to return it to the millers, in order to entitle him to maintain this action on the contract for failing to make and deliver superfine flour.

The Court, on motion of the defendants, instructed the jury to the effect that he was so bound, and refused to in-instruct them that he might recover without having returned or offered to return the flour after he had discovered its defects.

The first branch of the instruction given, relates to the duty of ascertaining the quality of the flour when it was delivered at the mill; and on this part of the subject we deem it sufficient to say that there is no evidence conducing to show that he was bound, either by agreement or by the nature of the transaction, or by the usage of the trade or of the place to have the flour inspected, either at the mill or in the town of Augusta.   But, on the contrary, the evidence conduces to show that an inspection at the time of delivery was not contemplated, and that the flour was manufactured for exportation and sale at another market, where it would be subject to inspection.   Besides, the flour was inclosed in barrels, and even if it had been open to view, the differences between the finer qualities might not be discoverable by ordinary observation.   Under these circumstances, we are of opinion that the plaintiff was not bound to ascertain the quality of the flour at the mill, by examination, and that there being no ground to presume that he was actually apprised of its inferiority, he had a right, upon the representation of the millers, to accept it as 'superfine,' and should not be prejudiced by such acceptance.

*One who delivers the material to be manufactured into an article of a particular quality, and put up for exportation, (flour) is not bound to have it inspected before he receives it.*

Was the plaintiff bound to return or offer to return the flour when its inferiority was discovered by the inspection at Cincinnati?

In support of the affirmative of this question, we have been referred to the cases of *Dana* vs *Boyd*, 2 *J. J. Marshall*, 593, and *O'Bannon, &c.* vs *Relf, &c.* 7 *Dana*,

*Nor in such a case, to return the manufactured article, on ascertaining it to be deficient, in order to preserve his right of action against the manufacturer.*

320.   But upon an attentive consideration of those cases, we are of opinion that they do not decide the question as it is presented in the present case.   In the case of *Dana* vs *Boyd*, the Court declare the general doctrine upon contracts for the sale of goods, or for their manufacture and delivery at a stipulated price and of a specified quality, to be, that the reception of the goods by the purchaser or employer, precludes him from recovering damages for such defects as were known to him at the time.   That the contracts for manufacturing, referred to in this general annunciation of the doctrine, are contracts under which the manufacturer furnishes the material as well as the labor, or in which the material, though furnished by the employer, forms but an insignificant item in the value of the finished article, is obvious, not only from the reasons given in support of the doctrine, which, in strictness, apply only to sales or *quasi* sales, but more especially from the language used by the Court in applying the doctrine to the case before them.   In that case the principal material was furnished by the plaintiff, and the Court say, "the materials furnished by him were to be so changed, by the process of manufacturing, that he ought to be bound by the same rule that he would have been if the manufacturer had furnished the materials;" and as the plaintiff knew of the defects in the manufactured articles when he received them, it was decided that he had waived and lost the right of recovering for those defects.

As there was, in that case, no discovery of defects after the reception of the goods, the Court did not decide what would have been the duty of the plaintiff, if, being ignorant of the defects at the time of reception, he had afterwards discovered them.   But in stating the general doctrine as above cited, they go on to say, that in case of such subsequent discovery, the purchaser or employer (in the case referred to,) must offer to restore the goods; and it may be inferred that for the same reason which induced them to apply the first branch of the doctrine to the case before them, they would also have applied this latter branch had the defects been subsequently discovered. It may be admitted too, that in cases where the acceptance of the goods, with knowledge of defects, would be

a waiver of them, so as to preclude an action on the contract on account of them, there should be an offer to return the goods, or something as nearly equivalent as the circumstances will allow, upon a subsequent discovery of defects not known at the time of reception.

The question then is, whether the principle that the acceptance of goods known to be defective, precludes an action on the contract under which they are delivered, is applicable to a contract for work and labor to be performed upon the plaintiff's materials, without the addition of any ingredient furnished by the manufacturer, and when the value of the material is but little enhanced by his labor. It is clear in this case, that the flour to be delivered to the plaintiff was intended to be the produce of his own wheat, as the flour actually delivered is understood to have been, so that the defendants, although they had the possession of the wheat, and afterwards of the flour, were not the owners of either or of any portion of either, but the plaintiff was the exclusive owner of both in succession, the flour being, in fact, a portion of the same substance which he had deposited in the mill, changed in its form only, by being freed from some of its grosser particles. In the case of *Dana* vs *Boyd*, there was not only a change in the form of the plaintiff's materials, but additional materials furnished by the defendant were engrafted upon them, and by the labor, skill, and materials of the defendant the value of the plaintiff's materials was greatly enhanced. If then, the plaintiff's materials in that case were so changed, by the process of manufacturing, as to subject him to the same rule as if the defendant had furnished all the materials, it does not follow, that in this case, where the defendant furnished none of the material, and where his labor added but little to the value of that furnished by the plaintiff, the same conclusion should be adopted. If, from the circumstances above referred to, the manufacturer, in the case of *Dana* vs *Boyd*, acquired such a property in the manufactured article as entitled him to retain it as his own, if the employer intended to dispute his performance of the contract, we do not perceive that, in this case, where the same circumstances do not exist, the same consequence should follow.

When the value of the labor bestowed in manufacturing is small compared with the material furnished by the employer, though the employer may know that the manufacturer has failed in his contract, is not bound to refuse the manufactured article, to give him a right of action against the manufacturer.

McKIBBEN
vs
BAKERS.

The requisition that the purchaser or employer shall reject the article tendered, if known to be defective, is based upon the idea, that the parties are thereby to be placed in *statu quo*, as in the rescission of a contract; and when this is impracticable, or cannot be done without great inconvenience or prejudice, the acceptance of the article does not, as in other cases, create conclusive evidence of a sufficient performance of the contract, and therefore, does not preclude the action for its non-performance, 2 *Starkie's Ev.* 640–644; 3 *Ib.* 1769–70. Upon this authority, as well as upon the reason of the case, we are of opinion that the plaintiff, even if he had known of the defects in the flour when it was tendered, was not bound to give it up to the defendants in order to entitle himself to this action.

An offer, by an employer, to give up an article to a manufacturer, whose labor had added but little to the value of the material, would not be an offer to rescind, thereby to place the parties in *statu quo*, but, of a new contract, which employer is not bound to make.

A complete rescission of the contract between these parties was impracticable, since the plaintiff could not be restored to the possession of his wheat; a mere rejection of the flour would not have placed the parties in *statu quo*, but on the contrary, would have given to the defendants, for the first time, the ownership of the flour, and the right of disposing of it, while it would have deprived the plaintiff of his property, and thrown him upon the personal responsibility of the defendants for his entire remuneration. If the defendants might have had a lien upon the goods for the small value of their labor, their tender of the flour shows that they did not look to that lien for their security. And it seems to us that any interest in the flour, which their right to compensation might have given them, was too small, when compared with that of the plaintiff, to require the abandonment of his whole property for its safety. Whatever might have been the case, if the interest of the parties had approximated to equality, or if that of the defendants had preponderated, it seems to us unreasonable, that in a case of such great disparity, the employer should be compelled to surrender his property in order to obtain satisfaction, in damages, for the inferiority of the manufacturers' work. And we are of opinion that the decision in the case of *Dana* vs *Boyd*, does not require the doctrine to be extended to this case; if it is to be extended to this case, it must em-

brace every case in which the labor of the mechanic or manufacturer, however small, is inseparably engrafted upon the property of the employer; and although it may be, that in every such case, the employer has the right to offer his property to the mechanic, such an act would not be an offer to rescind the contract or the transaction, and to place the parties in *statu quo*, but would be the offer of a new contract, which would produce entirely new right and new relation. We think such an offer was not required in this case, either by authority or analogy. It may be, that in all cases where the vendor or manufacturer would have a right, by the contract, to substitute other articles for those tendered, or where he could make the article perfect by some additional labor, the acceptance of the article, with a knowledge of its defects, and without affording an opportunity of substituting or making it perfect, should deprive the party of all right to proceed on the contract, for the defects in the performance. But where the contract is for a specific thing, the condition of which cannot be improved after the defect is known, this principle would not apply.

The case of *O'Bannon &c.* vs *Relf*, *&c.* was upon a contract for the sale and delivery of articles of specific qualities, to be manufactured by the defendants, out of their own materials, and is therefore inapplicable to the circumstances of this case. The decision there given, is based upon the general doctrine asserted in *Dana vs Boyd*, and that case is referred to, not for the purpose of affirming or extending the application of the general doctrine as there made, but as authority for the general doctrine itself, which, if applicable in any case of an executory contract for the sale of goods of specific quality, was certainly applicable to the contract on which the action of O'Bannon was founded. It is to be observed, however, that the opinion in the case of *O'Bannon &c.* vs *Relf*, *&c.* implies that, even upon that contract, it might not have been necessary for the plaintiffs actually to have offered a return of the goods, upon discovering the defects, but that under certain circumstances, a mere notice would have been sufficient, and that there might possibly be sufficient reason for dispensing even with notice. The evidence in this

McKibben
vs
Bakers.

case shows, that in disposing of the flour, according to its appropriate destination, it was sold at some distance from the place of manufacture, before its defects were discovered; and weie it conceded that the general doctrine asserted in the cases of *Dana* vs *Boyd* and *O'Bannon &c.* vs *Relf, &c.* is applicable to this contract, it would seem that the circumstances just stated, would be a sufficient reason for not returning or offering to return the flour. And were it further conceded that, under all circumstances, notice of the defects, when discovered, should, in reasonable time, be given to the vendor or manufacturer, it appears that in this case, the defendants were notified of the sale and inspection at Cincinnati, and that within five or six days afterwards they wrote to the purchaser, requesting an opportunity for re-examining the flour, which they insisted was superfine, and saying that this was all they asked: whence it may be inferred that they neithei expected nor desired to be invested with the ownership. The fact that the opportunity of re-examination was denied by the purchaser at Cincinnati, however it may operate on the question as to the quality of the flour, which is certainly not concluded by the certificate of the inspector, can have no influence upon the question whether the flour ought to have been returned to the millers, or whether they ought to have received or did in fact receive sufficient notice of the defects, and the evidence does not show that the refusal of the opportunity of re-examining the flour was the consequence of any delay in giving the notice to the defendants.

The value of an article, at the place where it is to be manufactured, is that at which it is to be estimated in a suit for failure of manufacturer to do his duty.

Upon the whole case then, we are of opinion that the Court erred in giving the instruction on the subject of the duty of the plaintiff, upon his discovering the inferiority of the flour; and that the instruction asked for by the plaintiff on that subject, should have been given with the qualification that if the jury should believe that the flour, or some portion of it, was in fact not superfine; and that the difference in value at Augusta should be the criterion of damages.

It seems to us also, that the written evidence of the contract of sale, by the plaintiff, to the purchaser at Cin-

cinnati, should, upon being proved, have been admitted as evidence.

Wherefore, the judgment is reversed and the cause remanded for a new trial in conformity with this opinion.

*Hord* for appellant: *Payne & Waller* for appellees.